**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VENISA D'CRUZ, | ) | CASE NO. 1:25-CV-2375 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

The Commissioner of Social Security denied Plaintiff Venisa D'Cruz's application for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). Ms. D'Cruz seeks judicial review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Compl., ECF No. 1.) The parties have consented to a magistrate judge exercising jurisdiction over the case pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and Local Rule 73.1. (Consents and Order, ECF No. 9.)

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision denying Ms. D'Cruz's application for benefits.

## II. PROCEDURAL HISTORY

In April and May of 2023, Ms. D'Cruz applied to the Social Security Administration (SSA) seeking a period of disability and DIB benefits (April), and SSI benefits (May), claiming that she became disabled on June 1, 2021. (Tr. 216, 226.)[1] She identified four allegedly disabling

---

[1] The administrative transcript appears at ECF No. 7. I will refer to pages within the transcript by identifying the Bates number printed on the bottom right-hand corner of the page (e.g., "Tr. 32"). I will refer to other documents in the record by their CM/ECF document numbers (e.g., "ECF No. 11") and page-identification numbers (e.g., "PageID# 1191").

conditions: (1) Type 2 diabetes; (2) hyperlipidemia; (3) polyarthralgia; and (4) depression. (Tr. 277.)

The SSA denied Ms. D'Cruz's application initially and upon reconsideration. (Tr. 59, 69, 79, 80, 81, 92, 93, 104.) Ms. D'Cruz requested a hearing before an administrative law judge (ALJ). (Tr. 129–30.) The ALJ held a hearing on August 8, 2024, at which Ms. D'Cruz was represented by counsel. (Tr. 39–58.) Ms. D'Cruz testified, as did an independent vocational expert (VE). (*Id.*)

On August 23, 2024, the ALJ issued a written decision finding that Ms. D'Cruz was not disabled. (Tr. 14–33.) Ms. D'Cruz requested review of the ALJ's decision and submitted a brief identifying alleged errors in that decision. (Tr. 213–15, 343–45.) While raising several discrete alleged errors across the brief, Ms. D'Cruz did not argue in that brief that the ALJ had misclassified her past relevant work. (*See id.*)

On September 10, 2025, the Appeals Council denied review. (Tr. 1.)

Ms. D'Cruz filed her Complaint on November 4, 2025, challenging the Commissioner's final decision that she is not disabled. (ECF No. 1.) Ms. D'Cruz asserts one assignment of error for review:

> The ALJ improperly found that Plaintiff's past work was an unskilled job as a hotel housekeeper (DOT 323.687-014), when her past work was actually a composite job that combined the duties of hotel housekeeper with the duties of hotel housecleaner supervisor (DOT 323.137-010), which is a skilled supervisory position that could not be performed by a worker who is limited to simple job instructions.

(Pl.'s Merit Br. at 5, ECF No. 11, PageID# 1191.)

## III. BACKGROUND[2]

### A. Personal, Educational, and Vocational Experience

Ms. D'Cruz was born in February 1965 and was 58 years old on the date of her application. (*E.g.*, Tr. 216.) She graduated from high school. (Tr. 45, 278.) She is divorced and at different points during her application she lived alone and lived with a daughter. (Tr. 44, 217, 731.) She has two adult children. (Tr. 44, 224.) She has a driver's license and is able to drive. (Tr. 44–45.) She has work experience as a caretaker at a retirement community, as a maintenance worker at a school, and more recently in housekeeping for several different hotels. (Tr. 278–79, 292.)

### B. Relevant Hearing Testimony

#### 1. *Ms. D'Cruz's Testimony*

Ms. D'Cruz testified that she last worked in 2021 for a hotel in Cleveland. (Tr. 45.) She worked for that company from 2019 to 2021. (*Id.*) She described that work as follows:

> I was a housekeeper cleaning rooms, you know, making sure that when they check out the room is clean, mop, and sweep, change the bed sheets, so it's basically cleaning, mopping, making beds, you know, picking up the trash, removing the dishes. . . . You went from room to room and everything.

(Tr. 45–46.)

She testified that the housekeeping cart she pushed weighed between 40 and 50 pounds, and she would carry close to five pounds of supplies to each room, back and forth. (Tr. 46.) She testified that she was a "housekeeping cleaner." (*Id.*)

The vocational expert stated that she did not need any further information about this job to classify the work. (*See* Tr. 46.) Ms. D'Cruz's counsel did not elicit any further testimony about the work.

---

[2] Ms. D'Cruz's arguments relate solely to the ALJ's classification of her past hotel work. She cites no medical record in support of her assignment of error, nor does she claim that her residual functional capacity was incorrectly assessed. The Court therefore limits its summary of the record evidence to that which is relevant to Ms. D'Cruz's very narrow assignment of error.

Ms. D'Cruz then explained that she was terminated from that job after getting sick and "slowing down" at work. (Tr. 46–47.) She was supposed to have a room turned around in 20 minutes, but she found that she could not meet that timeline because of stamina and energy issues. (Tr. 47.) She described limitations with respect to standing, walking, and lifting. (Tr. 50–51.)

### 2. *Vocational Expert's Testimony*

Allison Reno testified as a vocational expert ("VE") at the hearing. (Tr. 53.) Ms. D'Cruz did not object to Ms. Reno's qualifications to serve as an expert in the case. (*Id.*)

Ms. Reno classified Ms. D'Cruz's past relevant work as that of a hotel housekeeper (DOT 323.687-014). (Tr. 53.) Ms. Reno testified that the job is light as generally performed, but was a medium exertion job as Ms. D'Cruz said she actually performed it. (Tr. 53–54.)

The ALJ asked the VE to assume that a hypothetical individual with Ms. D'Cruz's age, education, and work experience is capable of work at the medium exertional level, with additional limitations. (Tr. 54.) Specifically, the person can frequently climb ramps and stairs. (*Id.*) They can occasionally climb ladders, ropes, or scaffolds. (*Id.*) They can frequently stoop, kneel, and crouch. (*Id.*) They can understand, remember, carry out, and complete simple instructions. (*Id.*) They can tolerate superficial interactions with supervisors, coworkers, and the public. (*Id.*) The ALJ defined that to mean that there could be no arbitration, mediation, negotiation, or being responsible for the safety or supervision of others. (*Id.*) The person can adapt to occasional and routine workplace changes. (*Id.*)

The VE testified that the hypothetical person would be able to perform Ms. D'Cruz's past relevant work, both as generally performed and as Ms. D'Cruz performed the work. (*Id.*)

The ALJ next asked the VE to further limit the person to work at the light exertional level. (*Id.*) The VE testified that such a person could perform Ms. D'Cruz's past relevant work as generally performed, but not as specifically performed by Ms. D'Cruz. (Tr. 55.)

The ALJ next asked the VE to further limit the person, to work at the light exertional level and additionally to only four hours of standing and walking. (*Id.*) They can lift and carry 20 pounds occasionally and 10 pounds frequently. (*Id.*) They can sit for six hours and walk for four hours. (*Id.*) The VE testified that these additional limitations would eliminate the housekeeping position, both as generally performed and as specifically performed. (*Id.*)

Ms. D'Cruz's counsel asked the VE to consider the person from the second hypothetical question, and to further limit them to occasional postural limitations—occasional ramps and stairs, and occasional stooping, kneeling, and crouching. (Tr. 56.) The VE confirmed that such a person could still perform the housekeeping position as generally performed, but could not perform the work as Ms. D'Cruz performed it. (*Id.*)

Ms. D'Cruz's counsel did not ask the VE questions about how she classified Ms. D'Cruz's past relevant work, nor did counsel point out those areas of the record where Ms. D'Cruz described supervising other employees.

### C. State Agency Consultants

A disability examiner (Jason Holliday), a physician (Leon Hughes, M.D.), and a psychologist (Jennifer Swain) reviewed Ms. D'Cruz's claim at the initial review level in August and September 2023. (Tr. 59–80.)

Based in part on the doctors' opinions, the consultants determined that Ms. D'Cruz retained the ability to perform medium exertion work with additional limitations, including, in relevant part, that she cannot work a job that requires her to negotiate with, instruct, persuade, or direct the work of others. (Tr. 67–68.) The consultants did not make a finding about whether she could perform her past relevant work, as they found that she could adjust to other work as an addresser, clearance cutter, or dowel inspector. (Tr. 68–69.)

In January 2024, at the reconsideration level, a different disability examiner (Katherine Brooks), physician (Jogendra Singh, M.D.), and psychologist (Robyn Murry-Hoffman, Psy.D.) reviewed Ms. D'Cruz's claim. (Tr. 81–104.)

Drs. Singh and Murry-Hoffman found that the initial-level conclusions were supported by and consistent with the evidence of record. (Tr. 100, 102.) Based on these opinions, the consultants determined that Ms. D'Cruz could adjust to work as a store laborer, housekeeping cleaner, or dowel inspector and was not disabled. (Tr. 103.) They explicitly said that they were not making a finding about Ms. D'Cruz's capacity to perform her past relevant work, but the Court notes that they identified housekeeping cleaner (DOT 323.687-014) as among the jobs available to Ms. D'Cruz. (*Id.*)

**D. <u>Relevant Record Evidence</u>**

In a disability report filed on May 10, 2023, Ms. D'Cruz listed her job title as "Housekeeping," identifying that she worked for several different hotels between 2003 and June 2021. (Tr. 278–79.)

Ms. D'Cruz filled out a work history report as part of her application, seemingly in June 2023. (Tr. 292–99.) She identified her hotel job titles as "Housekeeping/PBX operator" (1992–2003), "Asst. Exec. Housekeeping" (2003–2010), "Asst. Exec. Housekeeping" (2015–2017), "Exec. Housekeeping" (2017–2019), and "Exec. Housekeeping" (2019–2021). (Tr. 292.)

When asked to describe her job duties as "Housekeeping/PBX operator" (1992–2003), Ms. D'Cruz wrote "cleaning guest room [and] answering phone call." (Tr. 298.) She indicated that she did not supervise other people in that position. (*Id.*)

When asked to describe her job duties as "Asst. Exec. Housekeeping" (2003–2010), Ms. Cruz wrote "making sure all rooms [were] clean." (Tr. 294.) She checked boxes indicating that she

supervised other people, hired and fired employees, and was a lead worker. (*Id.*) She wrote that she supervised 20 people and spent "10 [hours]" supervising people. (*Id.*)

When asked to describe her job duties as "Asst. Exec. Housekeeping" (2015–2017), Ms. D'Cruz wrote "making sure the hotel was clean [and] guest room clean." (Tr. 295.) She again indicated that she supervised people (25 people), spent "all day" supervising others, and was responsible for hiring and firing employees. (*Id.*)

When asked to describe her job duties as "Exec. Housekeeping" (2017–2019), Ms. D'Cruz wrote "making sure guest rooms are ready for check in [and] hotel is clean." (Tr. 296.) She said she supervised 25 people, spent "all day" supervising others, and was responsible for hiring and firing employees. (*Id.*)

When asked to describe her job duties as "Exec. Housekeeping" (2019–2021), Ms. D'Cruz wrote "same as the last hotel." (Tr. 297.) Her answers with respect to supervision remained the same. (*Id.*)

Ms. D'Cruz told a consulting psychological examiner in August 2023 that she had worked for twelve years as a "reservation agent" for a hotel and most recently worked as "a housekeeping manager" at a different hotel. (Tr. 729.)

Ms. D'Cruz submitted another statement regarding her work background as part of her application, seemingly in May 2024. (Tr. 339.) When asked to describe her job duties over the years, she wrote only that her duties were "housekeeping[,] cleaning guest rooms" from 2019 to 2021, and "housekeeping" from 1992 to 2010 and from 2017 to 2019. (*Id.*)

## IV. THE ALJ'S DECISION

The ALJ found that Ms. D'Cruz meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. 19.) The ALJ further found that Ms. D'Cruz had not engaged in substantial gainful activity since the alleged onset date of June 1, 2021. (*Id.*)

The ALJ next determined that Ms. D'Cruz had the following severe impairments: (1) diabetes mellitus with neuropathy; (2) osteoarthrosis of the knee; (3) hyperlipidemia; and (4) depressive disorders. (*Id.*)

The ALJ concluded that none of Ms. D'Cruz's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20.)

The ALJ determined that Ms. D'Cruz had the residual functional capacity ("RFC") to perform work at the light exertional level with a number of additional limitations. (Tr. 23.) Specifically, she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. (*Id.*) She can occasionally stoop, kneel, and crouch. (*Id.*) She can understand, remember, carry out, and complete simple instructions. (*Id.*) She can tolerate superficial interactions with supervisors, coworkers, and the public, which the ALJ defined as "no arbitration, mediation negotiation, or being responsible for the safety or supervision of others." (*Id.*) She can adapt to occasional and routine workplace changes. (*Id.*)

The ALJ, based "on the claimant's work history, earnings record, and vocational expert's testimony," classified Ms. D'Cruz's past relevant work as that of a hotel housekeeping cleaner (DOT 323.687-014) and found that Ms. D'Cruz retained the ability to perform her past relevant work as it is generally performed. (Tr. 31–32.) The ALJ therefore found that Ms. D'Cruz was not disabled. (Tr. 32–33.)

## V. LAW & ANALYSIS

### A. <u>Standard of Review</u>

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (cleaned up) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consolidated Edison*, 305 U.S. at 229).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

**B. Standard for Disability**

To establish entitlement to DIB, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

Consideration of disability claims for both DIB and SSI follows a five-step review process. 20 C.F.R. § 404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (quoting 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the

impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17.

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)–(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(g). *See Abbott*, 905 F.2d at 923.

**C. <u>Analysis</u>**

In her sole assignment of error, Ms. D'Cruz argues that the ALJ erred by classifying her past relevant work as that of a hotel housekeeper. She says that her statements about her work history reveal that the job was a composite job comprising the duties of a hotel housekeeper (DOT 323.687-014) and a hotel housecleaning supervisor (DOT 323.137-010). She points out that she indicated on one work history form that, during the five years preceding the ALJ's decision, she supervised up to 25 people, had responsibility for hiring and firing employees, and was a lead worker. (*See* Tr. 296–97.) Ms. D'Cruz says that the ALJ's alleged error was not harmless because

a hotel housecleaning supervisor is a skilled supervisory position that cannot be performed by a worker limited to simple job instructions, as she was limited. She further argues that the ALJ could not base a decision on how the job is generally performed in the national economy because a composite job has no counterpart in the Dictionary of Occupational Titles.

The Commissioner defends the ALJ's decision, pointing out that Ms. D'Cruz bore the burden of proof at Step Four of the sequential evaluation process. He further directs the Court to Ms. D'Cruz's hearing testimony, which did not describe supervisory responsibilities, to the VE's classification of her past relevant work (which went unchallenged by Ms. D'Cruz, who was represented by counsel at the hearing), and to the 2024 work history report, in which Ms. D'Cruz identifies her hotel jobs without listing supervisory duties. The Commissioner insists that these records provide substantial evidence for the ALJ's classification of Ms. D'Cruz's past relevant work, even if one other record exists that states that Ms. D'Cruz was a supervisor.

In reply, Ms. D'Cruz repeats her argument that her past relevant work was a composite job. She restates her position that—as a composite job—it could not form the basis of a Step Four denial unless the ALJ found that she could perform all parts of the job as actually performed, and argues that if the ALJ rejected the idea that this was a composite job, the ALJ was required to explain that decision with adequate reasoning.

After careful consideration, the Court finds that Ms. D'Cruz waived the argument she asserts in this appeal by failing to raise an issue about the VE's testimony or classification of her past relevant work at the hearing or before the ALJ issued his decision. Therefore, the Court cannot find reversible error in the ALJ's decision to rely on the VE's testimony in concluding that Ms. D'Cruz could perform past relevant work as a hotel housekeeping cleaner (DOT 323.687-014) as generally performed.

"The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, 116 F.3d 1480, 1997 WL 338719 (6th Cir. 1997) (Table) (finding the plaintiff's failure to raise objections to the VE's testimony that she could perform certain jobs waived the argument on appeal) (other citations omitted).

For example, in *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 836 (6th Cir. 2006), the claimant argued that the ALJ had erred in determining the onset date of their disability. The ALJ had elicited testimony relevant to the disability onset date from a VE. *Id.* at 837. The claimant's counsel did not object to the testimony or cross-examine the VE at the hearing, however, because he thought the burden was on the ALJ to establish the onset date and that the VE's testimony up to that point was sufficient for the claimant to win the case. *Id.* The Sixth Circuit determined that "counsel may not now complain" about the substance of the VE's testimony "because he failed to cross examine [the VE] when he had an opportunity to do so" at the administrative hearing. *Id.*

Similarly, in *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011), the claimant argued that the testimony the VE had given at the administrative hearing was unreliable. The Sixth Circuit explained, "Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but . . . did not probe the deficiency now identified on appeal." *Id.*

Here, at the hearing, the VE testified that she had reviewed the information the SSA shared with her and had listened to Ms. D'Cruz's hearing testimony. (Tr. 53.) She classified Ms. D'Cruz's

job title as that of a hotel housekeeper (DOT 323.687-014), an unskilled position at SVP 2 that is generally performed at the light exertional level and which was actually performed by Ms. D'Cruz at the medium exertional level. (Tr. 53–54.) Ms. D'Cruz's counsel had the opportunity to cross-examine the VE and bring out any conflicts with the record evidence. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009) (stating that the obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p falls to the claimant's counsel). Yet counsel did not question the VE about her classification of Ms. D'Cruz's past relevant work or bring out any conflicts between the VE's testimony and the record evidence with respect to this issue. Notably, both the work history form that Ms. D'Cruz points to in this appeal and her statements to the psychological consulting examiner were in the record prior to the hearing. And further, even after reviewing the ALJ's hearing decision, and in taking an appeal to the SSA Appeals Council through her attorney, Ms. D'Cruz again failed to object to the ALJ's classification of her past relevant work or otherwise raise the VE's classification of her past relevant work as an error.

Courts in this circuit routinely decline to find reversible error based on alleged deficiencies in VE testimony under similar circumstances. *See Turner v. Comm'r of Soc. Sec.*, No. 2:19-cv-900, 2019 WL 5781608, at *7 (S.D. Ohio Nov. 5, 2019) (claimant waived challenge to the VE's classification of his past relevant work where he was represented and failed to challenge the VE's classification "or to alert the VE or ALJ that there was a possible inconsistency between the VE's testimony and the evidence in the record"), *report and recommendation adopted*, 2020 WL 132269 (S.D. Ohio Jan. 13, 2020); *Harris*, 2012 WL 4434078, at *3–4 (claimant's argument that the VE should have classified her past relevant work as a composite job, not two different jobs, was precluded by her failure to raise the issue at the administrative hearing despite being represented

by counsel); *Mitchell v. Comm'r of Soc. Sec.*, No. 18-cv-11132, 2019 WL 1521996, at *4 (E.D. Mich. Mar. 7, 2019) ("[O]bjections at step four to the characterization of a claimant's past relevant work or to VE testimony must be made at the hearing or at some point before the ALJ's decision in order to be later argued before the court."), *report and recommendation adopted*, 2019 WL 1516058 (E.D. Mich. Apr. 8, 2019); *Sylvester v. Comm'r of Soc. Sec.*, No. 4:23-cv-778, 2024 WL 1531323, at *5 (N.D. Ohio Feb. 26, 2024), *report and recommendation adopted*, 2024 WL 2186175 (May 15, 2024); *Coakwell v. Comm'r of Soc. Sec.*, No. 1:19 CV 2876, 2020 WL 7711125, at *10 (N.D. Ohio Dec. 29, 2020).

The non-binding cases cited by Ms. D'Cruz do not convince the Court to depart from this well-settled practice here. She cites *Comeau v. Comm'r of Soc. Sec.*, 2016 WL 1253315 (E.D. Mich. Mar. 30, 2016), and *Hurley v. Kijakazi*, No. 6:21-cv-166-HAI, 2022 WL 17327844, at *3 (E.D. Ky. Nov. 29, 2022), merely for propositions of law regarding how the SSA considers composite jobs at Step Four.

In *Dirske v. Comm'r of Soc Sec.*, No. 1:16-cv-205, 2016 WL 6956612 (W.D. Mich. Nov. 29, 2016), the VE testified at the hearing that the claimant's past relevant work was a "combination occupation," involving the tasks of both a receptionist and a general clerk. *Id.* at *4. The ALJ asked the VE to "parse" out the receptionist position and consider it apart from the general clerk position. *Id.* Relying on the VE's testimony that the claimant could perform the receptionist tasks when separated in this way, the ALJ relied on that response to find the claimant not disabled at Step Four. *Id.* The court in *Dirske* found this to be error, albeit harmless error under the facts of the case. *Id.*

The *Dirske* opinion is silent about the arguments raised before the agency, but *Dirske* is distinguishable because the evidence adduced at the hearing established that the claimant's position was a composite job. The ALJ's alleged error, then, was not in relying on deficient VE

testimony but rather in failing to appreciate that the agency does not permit an ALJ to split a composite job into two separate jobs and then find the claimant capable of performing the less demanding one. *See, e.g.*, *Hansen v. Comm'r of Soc. Sec.*, No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014). The same type of legal argument, challenging the ALJ's decision to split a composite job without alleging a particular deficiency in the VE's hearing testimony, was presented in *Deborah T. v. Saul*, a case Ms. D'Cruz relies on in her reply brief. *Deborah T*, No. 4:18-cv-765-O-BP, 2019 WL 5025951 (N.D. Tex. Sept. 6, 2019), *report and recommendation adopted sub nom. Taylor v. Saul* (N.D. Tex. Sept. 25, 2019).

Ms. D'Cruz's assignment of error, unlike the arguments in *Dirske* and *Taylor*, raises an alleged deficiency with the VE's testimony itself, one that could have been probed at the administrative hearing if her hearing counsel had raised an alleged conflict between the VE's classification of Ms. D'Cruz's work and the work history report she completed as part of her application. As it stands, because counsel did not raise the issue before the agency, the record reflects that the ALJ relied on VE testimony that was unchallenged and which was fully consistent with how Ms. D'Cruz herself described her work at the hearing.

The Court finds that, under these circumstances, Ms. D'Cruz waived any argument that the VE or ALJ should have classified her past relevant work as a composite job, and the Court finds no reversible error in the ALJ's reliance on the VE's unchallenged testimony. *See Stevens v. Comm'r of Soc. Sec.*, No. 2:14-cv-2186, 2016 WL 692546, at *12 (S.D. Ohio Feb. 22, 2016) ("Plaintiff did not complain or otherwise alert the ALJ that she believed he had mischaracterized her job. . . . Plaintiff never objected to the VE or ALJ's characterization of her past relevant work. . . . Plaintiff's attorney asked no questions regarding whether Plaintiff's past work was a composite job. Plaintiff's attorney did not question or object to the VE's characterization of Plaintiff's past

work . . . . Consequently, Plaintiff may not now complain [that] the ALJ relied upon the VE's description of Plaintiff's past work when Plaintiff failed to raise this issue during the hearing."), *report and recommendation adopted*, 2016 WL 1156518 (S.D. Ohio, Mar. 24, 2016).

The ALJ reasonably relied on the VE's characterization of Ms. D'Cruz's past relevant work as a hotel housekeeping cleaner (DOT 323.687-014), and the ALJ's conclusion that she is not disabled is supported by substantial evidence. Accordingly, the Court overrules Ms. D'Cruz's assignment of error.

## VI. CONCLUSION

Having overruled Ms. D'Cruz's assignment of error for the reasons set forth above, the Court AFFIRMS the Commissioner's final decision.

Dated: September 25, 2026

/s/ *Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge